## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

|  |  |
|---|---|
| STEPHANIE WILBURN,<br>*Plaintiff*<br><br>v.<br><br>TOPGOLF INTERNATIONAL, INC., et al.<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil No. 1:19-cv-493<br>Hon. Liam O'Grady |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Partial Summary Judgment, Dkt. 39, and Plaintiff's Motion for Sanctions, Dkt. 42. The motions were fully briefed and the Court dispensed with oral argument because it would not aid in the decisional process.

Defendants ("Topgolf") moved for partial summary judgment on four grounds. First, Topgolf claims the overtime sought by Plaintiff ("Wilburn") is not recoverable because she was exempt from overtime requirements by the Highly Compensated Employee exemption during the entire period for which she seeks to recover. Second, Topgolf argues that Wilburn was exempt from overtime requirements for the first year of her maximum recovery period, under the Retail or Service Establishment exemption. Third, Topgolf argues it is entitled to summary judgment on the issue of willfulness and that Wilburn's recovery period is therefore limited to two years. Fourth and finally, Topgolf argues that Wilburn's workweek fluctuated in hours, she knew this by the beginning of the recovery period, and consequently she cannot recover "straight time" pay. Instead, Topgolf asserts that any overtime due to her should be calculated using the fluctuating workweek method.

Wilburn, on the other hand, argues that evidence which would have defeated Topgolf's fluctuating workweek defense was lost or destroyed due to Topgolf's failure to issue a litigation

1

hold.  She asks the Court to sanction Topgolf by entering judgment against it on the fluctuating

workweek defense, precluding the use of that defense and effectively requiring straight time

calculation of damages.

## I. Background

Topgolf operates retail dining and sports gaming venues.  In 2015, the company was

undergoing rapid growth and sought to open a new venue in Loudoun County, Virginia.

Wilburn applied to work there, was interviewed, then hired as a corporate Event Sales Manager

("ESM").

ESMs were tasked with conducting sales.  Specifically, they sought corporate or large-

scale clients and booked those clients' events at Topgolf.  In doing so, they assisted the clients in

choosing from Topgolf's menu of available options and coordinated the events.  When Topgolf

created the ESM position, it classified the position as exempt from overtime requirements.  It

was a salaried position, and ESMs were paid a combination of salary and commission.  Topgolf

created the full-time position believing it would generally require 40 to 45 hours per week, but

ESMs were not required to record work hours.

Wilburn worked as an ESM beginning in June of 2015, and the Loudoun venue opened in

September.  She was scheduled to work 45 hours weekly, but the unscheduled work hours

increased as time went on and she found that completing her required tasks within 45 hours was

not possible.  She began to work weekends as well, and discovered that the work is seasonal to

some extent.  Notably, she booked three separate events with over 900 invitees, and with budgets

over $130,000.

On February 4, 2019, Topgolf replaced the ESM position with a new position, entitled

"Sales Account Manager" ("SAM").  Topgolf classified the SAM position as non-exempt from

2

overtime requirements, and SAMs such as Wilburn began tracking their hours and became eligible for overtime pay.

On April 23, 2019, Wilburn sued Topgolf, alleging that it willfully violated the Fair Labor Standards Act by willfully misclassifying her as exempt from overtime requirements while she was an ESM.

## II. Legal Standards

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party moving for summary judgment has the initial burden of establishing the basis for its motion and identifying the evidence which demonstrates the absence of a genuine issue of material fact.  *Id.*  Once the moving party satisfies its initial burden, the opposing party may show by means of affidavits or other verified evidence that a genuine dispute of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  While the facts and all justifiable inferences should be considered in the light most favorable to the nonmovant, *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013), courts must not resolve disputed facts, weigh the evidence, or make credibility determinations, *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)).

"[T]he mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citation omitted). "Mere speculation by the non-movant cannot create a genuine issue of material fact." *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (*Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001)). Where the nonmoving party fails to make a showing on an essential element of the claim for which he bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322-23.

## *B. Sanctions*

"The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citation and internal quotation marks omitted). Courts have broad discretion when deciding whether to impose spoliation sanctions. *Turner v. United States*, 736 F.3d 274, 281 (4th Cir. 2013).

## III. Discussion

Topgolf moves for partial summary judgment on four grounds. The first two are claims that Wilburn's was exempt from FLSA overtime requirements. First, Topgolf argues Wilburn fell within the Highly Compensated Employee exemption during the entire three-year recovery

4

period she asserts.  Second, Topgolf argues that she was exempt under the Retail or Service

Establishment exemption for one year, and that her maximum recovery is therefore limited to

two years.  Third, and alternatively, Topgolf argues it is entitled to summary judgment on the

issue of willfulness, and that Wilburn's recovery is accordingly limited to two years.  Fourth and

finally, Topgolf argues that Wilburn's recovery should be limited because she knew by the time

of her recovery period that her workweek fluctuated in hours, and that as a result, her overtime

should be calculated using the fluctuating workweek method.  This fourth issue is directly related

to Wilburn's motion for sanctions, in which she seeks entry of judgment against Topgolf on the

fluctuating workweek defense.

### A. Exemption Claims

The Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. §§ 201 *et seq.*,

"generally requires that employers pay overtime in the amount of one-and-a-half times an

employee's 'regular rate' for each hour their employees work in excess of 40 per week."

*Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015) (quoting 29 U.S.C. §

207(a)(1)).  "Employees are entitled to overtime compensation according to the general rule

unless their employer proves that one of the Act's many exemptions applies." *Williams v. Genex*

*Servs., LLC*, 809 F.3d 103, 104 (4th Cir. 2015).

Whether an employee is exempt from the overtime requirements of FLSA is a mixed

question of law and fact.  *Id.* at 109.  In FLSA exemption cases, how employees spend their

working time and the significance of an employee's duties are questions of fact.  *Icicle Seafoods,*

*Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Shockley v. City of Newport News*, 997 F.2d 18,

26 (4th Cir. 1993); *accord Calderon*, 809 F.3d at 120.  The ultimate question of whether the

exemption applies is a question of law.  *Calderon*, 809 F.3d at 120; *see also Icicle Seafoods, Inc,*

475 U.S. at 714, ("The question whether their particular activities excluded them from the

overtime benefits of the FLSA is a question of law."). Binding Fourth Circuit precedent requires

that employers "prove by clear and convincing evidence that an employee qualifies for

exemption." *Williams*, 809 F.3d at 109 (citing *Shockley*, 997 F.2d at 21).[1]  In making this

determination, the Supreme Court recently clarified that exemptions should be given a "fair

(rather than a 'narrow') interpretation." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134,

1142, (2018) (citation and internal quotation marks omitted); *accord Lovo v. Am. Sugar Ref.,*

*Inc.*, 2018 WL 3956688, at \*7 (D. Md. Aug. 17, 2018).

Topgolf argues in its motion that Wilburn fell within the highly compensated employee

exemption for the duration of her claim, and the retail or service establishment exemption for the

first year of her claim.

### 1) The Highly Compensated Employee Exemption Does Not Apply

Employees who are "employed in a bona fide executive, administrative, or professional

capacity," as defined by the Department of Labor regulations, are exempt from the overtime

requirements. 29 U.S.C. § 213(a)(1). Certain highly compensated employees "deemed exempt

under" the Act. 29 C.F.R. § 541.601(a)(1). At all times relevant here,[2] the highly compensated

employee exemption applied to employees (1) with a total annual compensation of at least

$100,000, which included at least $455 paid per week on a salary or fee basis, (2) who

customarily and regularly performs at least one exempt duty of an executive, administrative, or

---

[1] Topgolf asks the Court to apply a preponderance of the evidence standard based on the Supreme Court's opinion in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018). But, as the District of Maryland has noted, "nothing in the *Encino* decision relates to evidentiary burdens, nor does it even mention the phrase 'preponderance of evidence.'" *Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 146 (D. Md. 2019). Accordingly, like that court and the others cited therein, this Court sees no reason to depart from the well-settled law of the Fourth Circuit, and will therefor apply the "clear and convincing" standard.

[2] Effective January 1, 2020, the annual earnings threshold was increased to $107,432, and the weekly salary threshold rose to $684. 84 Fed. Reg. 51,230, 51,231, 51,307 (Sep. 27, 2019) (revising 29 C.F.R. §§ 541.601(a)(1), 541.200(a)(1)). The effective date of these values postdates the claims here.

professional employee, and (3) whose primary duty includes office or non-manual work.  29

C.F.R. § 541.601.

The parties agree that for the entirety of the period at issue, Wilburn received total annual

compensation of at least $100,000, was paid at least $455 per week on a salary basis, and that her

primary duty included office or non-manual work.  Accordingly, the only issue is whether she

customarily and regularly performed at least one exempt duty.

Topgolf argues that Wilburn customarily and regularly performed at least one duty or

responsibility of an exempt administrative employee.  The duties of an exempt administrative

employee are those which are "directly related to the management or general business operations

of the employer or the employer's customers," or which "include[] the exercise of discretion and

independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(1), (2).

Topgolf's arguments are addressed in turn.

### *i) Customarily and Regularly Performing Tasks Directly Related to Management or General Business Operations*

First, Topgolf argues that Wilburn customarily and regularly performed tasks directly

related to its management or general business operations.  It cites to the following tasks which

Wilburn performed in support of this argument:

i.   Running Banquet Event Order meetings with other staff members when her
     supervisor was unavailable;

ii.  Seeking new customers, including by use of social media, Chamber of Commerce
     meetings, and cold calls;

iii. Serving as the primary point of contact with corporate clients;

iv.  Making sure customers did not leave without paying, and;

v.   Responding to questions from the operations team, helping to solve problems that
arose during event execution, and dealing with upset customers.

None of these tasks place Wilburn within the HCE exemption.[3]

### a) Wilburn Did Not Run Meetings Customarily and Regularly

Topgolf argues that Wilburn is exempt because she conducted banquet event order
meetings with various staff members in the place of her supervisor. Conducting those meetings
is not necessarily a sales-related function. In addition, there is no dispute that a supervisor,
rather than a salesperson, usually runs those meetings. There is also no dispute that they
coordinate multiple departments and employees, constitute a type of program supervision, and
accordingly, they are directly related to management. Even so, Topgolf has failed to show it is
entitled to judgment as a matter of law because it has not carried its burden of establishing
Wilburn "customarily and regularly" conducted the meetings.

The phrase "customarily and regularly" describes frequency. It "includes work normally
and recurrently performed every workweek; it does not include isolated or one-time tasks." 29
C.F.R. § 541.701. A task may occur with a frequency which is "less than constant," 29 C.F.R.
§ 541.701 and the Department of Labor has explained the definition does not require "a task be
performed more than once a week," or even "that a task be performed each and every
workweek," 69 Fed. Reg. 22,122, 22,187 (Apr. 23, 2004). But the regulatory text clearly states
that "[t]he phrase 'customarily and regularly' means a frequency that must be greater than
occasional." 29 C.F.R. § 541.701.

---

[3] Topgolf also cited to Wilburn's deposition in support of the proposition that she made recommendations to her
supervisor about how to improve the business. The deposition merely reveals that Wilburn "felt comfortable" with
her supervisor and felt she could make suggestions though it never changed anything. Wilburn Dep. at 177:12-
178:10. This exchange does not establish any policy making authority or influence whatsoever.

Citing to paragraph 27 of its statement of facts, Topgolf argues that Wilburn "**regularly**

engaged in planning the essential work of the business by running Banquet Event Order meetings

with the operations and kitchen staff members when her direct supervisor was unavailable to do so."

Dkt. 40 at 28 (emphasis added). The statement of facts, in turn, reflects essentially the same

statement but without the word "regularly," and cites three pages of Wilburn's deposition. Deft.'s

Statement of Facts ¶ 27. The only relevant portion of the deposition, the actual evidence Topgolf

cited, only states that, "on occasion" when her supervisor is absent, she has "been asked to run

the meeting." Wilburn Dep. 124:21-22. Thus, Topgolf's evidence merely shows that, at most,

Wilburn ran the meetings occasionally, as did other ESMs. Because "customarily and regularly"

means a frequency that must be greater than occasional, Topgolf has failed to show an

entitlement to judgment as a matter of law.

> b) *Wilburn's Sales-Related Tasks Were Non-Exempt, Production-Type Work*

The directly related to management or general business operations requirement is

concerned with "the type of work performed by the employee." 29 C.F.R. § 541.201(a). To fall

within the administrative exemption, an employee's work must "assist[] with the running or

servicing of the business, as distinguished, for example, from working on a manufacturing

production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

The regulation provides a nonexclusive, illustrative list of the "functional areas" within which

administrative employees may work, which contrast with selling products in a retail or service

establishment, such as "public relations," "advertising," and "marketing." 29 C.F.R.

§ 541.201(b).

9

In analyzing this requirement, "[t]he United States Court of Appeals for the Fourth Circuit has instructed that 'the critical focus is whether an employee's duties involve the running of a business as opposed to the mere day-to-day carrying out of the business's affairs.'" *Brown v. Serenity C & C, Inc.*, 391 F. Supp. 3d 546, 555 (E.D. Va. 2019) (quoting *Calderon*, 809 F.3d at 123). The first consideration is where the employee's work falls within the "administrative-production dichotomy," which is to say, whether the employee performs "'production-type' work or work related to the administration or servicing of the business. *Id.* In the original context of factory work, the employees on factory lines producing the product were not exempt from overtime payment requirements, but the employees managing factory operations who were engaged in administration-type work were exempt. *See id.* The dichotomy is a relevant, albeit "imperfect analytical tool in a service-oriented employment context." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 694 (4th Cir. 2009). All production-type work is not administrative, but not all non-production-type work is administrative. *Calderon*, 809 F.3d at 123.

There is no genuine dispute that Wilburn's work was of the production type and therefore not administrative. Topgolf is engaged in the business of selling food and entertainment services directly to the public. Marques Decl. at 3. Wilburn's work as an ESM was to sell Topgolf's food and entertainment services. Her job was "focus[ed] on the sale, planning, and execution of [Topgolf's] largest single-venue scheduled events," and she was responsible for identifying prospective customers, recommending items from a menu which would fit their budgets, and generally planning events which the client would buy. Deft.'s Statement of Facts ¶¶ 5, 19-24. Accordingly, carrying out those sales is the mere day-to-day business of Topgolf, and is production-type work. Thus, her work as a salesperson for an employer in the business of selling

entertainment is akin to that of a factory worker in the critical respect that both bring the
employer's product to the market.

This conclusion is particularly clear here because Topgolf persuasively argues that it is a
retail or service establishment. *See* Dkt. 40 at 25-26. The regulation specifically distinguishes
"selling a product in a retail or service establishment" from the type of work which directly
relates to management or business operations. 29 C.F.R. 541.201(a). Since Topgolf is a retail or
service establishment, and Wilburn's work was to sell its products, her work is textually
distinguished from administrative-type work by the regulation itself.

Topgolf argues that Wilburn was engaged in advertising, marketing, and public relations,
each of which is an example of administrative work identified in the regulation. *See* 29 C.F.R.
§ 541.201(b). In support of this argument, Topgolf cites to Wilburn's business development
activities, such as cold calling potential customers, serving as Topgolf's point of contact for
some customers, and her involvement in resolving client issues which arose during the execution
of events. But each task identified by Topgolf and recited above, with the single exception of
running the meetings, is consistent with the general role of a sales representative in a retail or
service establishment. Because the regulation distinguishes such sales from work that is
"directly related to the management or general business operations," despite the fact that sales
necessarily involves aspects of advertising, marketing, and public relations, Topgolf cannot
recharacterize the work Wilburn does to its advantage here. 29 C.F.R. § 541.201(a). Wilburn's
work, unlike administrators in advertising, marketing, and public relations, is dependent on a
buyer. *Cf.* 29 C.F.R. § 541.203 (identifying examples of the administrative exemption and
noting that in the context of financial services industry employees, "an employee whose primary
duty is selling financial products does not qualify."). And while there is no dispute that Wilburn

11

never contributed to marketing campaigns or developing ads, the evidence here merely shows Wilburn's attempts to create targeted, personal interactions between herself and a single Topgolf customer or potential customer, albeit institutional customers.  The complained-of tasks are not administrative, but sales-related.  More specifically:

- Seeking new customers is intrinsically intertwined with sales, because sales only occur if one has a buyer;

- Sellers maintaining contact with clients is a natural consequence of the relationship where buyers make requests and pay for services;

- A salesperson's job is only complete if a customer pays, and;

- Ensuring the product is delivered as requested and paid for is both a part of executing a previously-made sale, and increasing the likelihood of a future sale by creating a return customer.

Thus, Wilburn's work did not become administrative due to the fact that she interacted with her customers or other Topgolf employees regarding events.

Moreover, the fact that Wilburn dealt with corporate clients and large sums of money does not impact the analysis.  For one thing, she was not the only ESM operating at Topgolf's Loudoun venue.  Wilburn Dep. 103:18-104:22.  For another, the fact that a position is particularly significant—even indispensable—to a company's business operations has no effect on the type of work an employee performs. *See Desmond*, 564 F.3d at 693.  The fact that Wilburn made large sales is irrelevant in this inquiry, because large or small, Wilburn made sales.  Thus, the type of client she dealt with and the prices for which her events sold does not render all her work inherently related to Topgolf's general business operations.  Instead, it is

immaterial and her work is effectively the same as that of a salesperson targeting individual members of the general public.

These undisputed facts show that in accordance with the nature of the service industry, Wilburn was selling widgets, particularized via a customer's selections from a menu of options, but widgets nonetheless. And while there is no question that the administrative-production dichotomy is imperfectly suited to the service industry, as noted above, it remains relevant. In the context of Topgolf's business, the type of work which Wilburn did and the examples which Topgolf cites to are production-type work. She was performing sales tasks, not administrative tasks.

### ii) Customarily and Regularly Performing Tasks Directly Related to Management or General Business Operations

Topgolf also argues that Wilburn falls within the HCE customarily and regularly performed tasks requiring the exercise of discretion and independent judgment. Generally, "discretion and independent judgment" is evident where the employee's duties involve the comparison and evaluation of possible courses of conduct and subsequent decision-making. 29 C.F.R. § 541.202(a). The discretion must pertain to "matters of significance," which refers to "the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). An employee's duties must be considered in light of all the facts of the employment situation. 29 C.F.R. § 541.202(b).

Matters of significance include formulating management policies or operating practices, major assignments, work that substantially affects business operations, whether the employee is involved in business objective planning, whether the employee represents the company in handling complaints, arbitration, or resolving grievances, and whether the employee has the authority to waive or deviate established policies without approval. 29 C.F.R. § 541.202(b).

13

Qualifying decisions may consist of recommendations for actions and need not be final or unreviewable, but it implies that "the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c). Any "exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

Topgolf has failed to establish that Wilburn exercised discretion or independent judgment with respect to matters of significance. First, Topgolf cites Wilburn's sales technique of talking to clients in different ways and recommending menu items based on client budgets. Dkt. 40 at 21. This does not demonstrate discretion, because Wilburn was constrained by the Topgolf procedures by recommending menu items. Thus, she was merely using skill in applying the procedures and standards set by Topgolf itself. Also, in its Reply, Topgolf argues that Wilburn made suggestions for business changes which meet the standard. Dkt. 51 at 6. But the example cited is a case of Wilburn's supervisor making an exception for her, based on exhaustion and its health effects. This is a far cry from providing consultation or expert advice to management, or from exercising discretion and independent judgment by making recommendations to revise Topgolf's policies and procedures. This was a mere accommodation request, based only on her individual circumstances and with no employer-wide ramifications. It was, therefore, not a matter of significance to anyone but Wilburn.

Relatedly, Wilburn's decisions regarding when to suggest site tours and how to contact past and prospective customers did not relate to matters of significance. The means by which an individual sales representative contacts a potential customer, and a suggestion of a site tour are decidedly dissimilar from the regulation's illustrative list of matters of significance. Whereas the

14

listed examples generally pertain to the business' strategic goals, these decisions merely relate to a single transaction—even if it were to be a large transaction.

Topgolf also argues that Wilburn exercised discretion or independent judgment by "decid[ing] when to seek approval from her manager to depart from [] guidelines." Dkt. 40 at 21. This decision is not an exercise in discretion because Wilburn lacked the "authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c). The problem is not that her decisions were unreviewable or not final, but that she was merely seeking approval.

Finally, citing three large events with up to 1,000 attendees and event budgets in excess of $130,000, Topgolf argues that "the magnitude of the events" Wilburn planned shows the extent of her discretion and independent judgment. But while the size and monetary value of the events may make them matters of significance, Topgolf has not identified what decisions Wilburn independently made or her customary and regular exercise of any authority to do so. Accordingly, Topgolf has failed to demonstrate it is entitled to judgment as a matter of law.

### 2. The Retail or Service Establishment Exemption Applies to the First Year of Wilburn's Recovery Period

The FLSA provides that employees of a retail or service establishment that work more than a forty-hour workweek are not entitled to overtime if their regular pay is more than one-and-one-half times the minimum wage, and more than half their compensation "for a representative period" derives from commissions. 29 U.S.C. § 207(i). Topgolf argues that Wilburn was an exempt employee during the first year of her recovery period because she met these requirements.

First, Wilburn's claim that, "[a]s time has progressed, [her] typical compensation is comprised of significantly lower percentages of commissions," does not undermine Topgolf's

contention.  Indeed, Topgolf specifically limited its motion for partial summary judgment to account for that fact, and has shown it is entitled to partial summary judgment on these grounds only for the first year of Wilburn's maximum recovery period.

Topgolf has argued, and Wilburn does not dispute, that it is a retail or service establishment, and that Wilburn's regular rate of pay for the first year of her maximum recovery period (April, 2016 through March, 2017) was at least one-and-one-half times the minimum wage.  Accordingly, the only dispute is whether more than half of Wilburn's compensation for a representative period represents commissions.

The parties agree that, in accordance with the statutory requirement, the representative period should be one year in duration, and cover the months of April, 2016, through March, 2017.  This will account for the seasonal business cycle and other factors.  Topgolf has provided uncontroverted evidence that during the representative period, commissions constituted more than half of Wilburn's compensation.  *See generally*, Marques Decl.

There is no genuine dispute of material fact.  The declaration shows that between April 1, 2016, and March 31, 2017, Wilburn's commissions exceeded 50% of her actual gross earnings. The values of Wilburn's earnings and commissions are set forth within the declaration and attachments specifically, and commissions made up slightly more than 55% of her actual gross earnings.  In the same declaration Topgolf has shown that a payroll error, which resulted in an untimely 12% "geo commission," for a number of months being paid in a single lump sum, did not artificially increase Wilburn's commissions.  Even after adjusting the calculation to account for what Wilburn's income would have been if the geo commissions were properly and timely paid, commissions would have constituted 54% of Wilburn's gross earnings.

16

Wilburn resists this conclusion, arguing that the percentage of income that derives from commissions is 49.67%. Dkt. 46 at 24-25. But Wilburn fails to cite to evidence or provide her method of calculating that figure. Accordingly, she has failed to create a genuine issue of material fact, and Topgolf is entitled to judgment as a matter of law.

### B. Willfulness Under the FLSA

Topgolf seeks partial summary judgment regarding whether it willfully misclassified ESMs as exempt, if it did so at all. A willful violation of FLSA extends the statute of limitations from two to three years.[4]

Only employers who "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]" have willfully violated the Act. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Mere negligence" is insufficient to show willfulness. *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011). "The employee bears the burden of proof when alleging that a violation is willful. Although this is ultimately a question of fact, a plaintiff must present sufficient evidence of willfulness to survive summary judgment." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 617 (E.D. Va. 2014) (internal citation omitted).

Here, Wilburn has presented evidence sufficient to survive summary judgment. Wilburn stated that it was not possible to accomplish the tasks of an ESM in the 45 hours each week which Topgolf intended the position to require. Topgolf failed to reevaluate the position's classification for four years, and during that time failed to track the actual hours ESMs worked. ESMs were eventually reclassified as nonexempt and renamed SAMs, but there is a dispute of fact as to whether any substantive changes to the job duties occurred. Under these

---

[4] Here, a finding of willfulness will extend the statute of limitations to include April 2016 to March 2017, the period discussed above, during which Wilburn was exempt from overtime payment requirements.

circumstances, a factfinder could determine that Topgolf knew the ESM position was misclassified but intended to profit from excess, uncounted hours worked by ESMs. Topgolf is incorrect in claiming Wilburn cannot prove a willful violation of the FLSA here, and accordingly is not entitled to judgment as a matter of law at this point.

### *C. Fluctuating Workweek Overtime Calculation*

Finally, Topgolf argues that any overtime Wilburn recovers should be calculated according to the "fluctuating workweek" method, originally set out in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942) and subsequently codified at 29 C.F.R. § 778.114. Wilburn, on the other hand, has moved to preclude Topgolf from asserting this defense as a sanction.

The fluctuating workweek method is "an alternative means by which an employer can determine its employees' regular and overtime rate of pay." *Flood v. New Hanover County*, 125 F.3d 249, 252 (4th Cir. 1997). It allows an employer to use a fluctuating pay plan so it may "place workers on a variable schedule tailored to the nature of their work without incurring prohibitive overtime costs for weeks in which the hours are the longest." *Griffin v. Wake County*, 142 F.3d 712, 714 (4th Cir. 1998). When the fluctuating workweek method applies, the rate for overtime compensation is half the regular rate of pay, instead of one-and-one-half times that rate. *See* 29 C.F.R. § 778.114(a).

### 1. No Sanctions Are Warranted

Wilburn seeks judgment entered in her favor on the single issue of Topgolf's fluctuating workweek defense as a sanction for Topgolf's failure to preserve relevant evidence. Specifically, she claims that Topgolf's failure to issue a personal document preservation notice to her supervisor, Taylor, caused the spoliation of significant evidence.

"Spoliation is 'the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018) (quoting *Silvestri*, 271 F.3d at 590). "A party seeking sanctions based on the spoliation of evidence must establish" that the alleged spoliator: (1) "had a duty to preserve material evidence," (2) "willfully engaged in conduct resulting in the evidence's loss or destruction," (3) at a time when "the alleged destroyer must have known that the evidence was or could be relevant." *Turner*, 736 F.3d at 282.

Any sanction is inappropriate here because Wilburn has not established the second or third element. "[S]poliation does not result merely from the 'negligent loss or destruction of evidence.'" *Id.* (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). Here, Wilburn has shown negligence at the most because she has not identified any evidence showing Topgolf knew or should have known that Taylor kept personal records in addition to those stored pursuant to Topgolf's official mechanisms. Absent such a showing, she cannot show that Topgolf willfully caused evidence to be lost, or that it did so knowing the evidence could be relevant. At most, Wilburn can show Topgolf had a duty to issue a personal document preservation notice, and failed to do so, but negligence does not support spoliation. Therefore, Wilburn has not shown spoliation occurred and sanctions are unavailable.

### 2. Topgolf Is Not Entitled to a Fluctuating Workweek Calculation

Topgolf seeks to calculate any overtime damages owed by the fluctuating workweek method. To utilize the fluctuating workweek method, employers must meet the following requirements:

> 1) the employee's hours must fluctuate from week to week; 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week; 3) the fixed amount must be

> sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked; and 5) the employee must receive a fifty percent overtime premium in addition to the fixed weekly salary for all hours that the employee works in excess of forty during that week

*Flood*, 125 F.3d at 252 (citing 29 C.F.R. § 778.114). The burden is on the employer to demonstrate the requisite clear mutual understanding, and in the "absence of a written contract, an employer can [] demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures." *Monahan v. Cty. of Chesterfield*, 95 F.3d 1263, 1275 n.12 (4th Cir. 1996). That is, the necessary understanding may be shown to be an implied term. *Id.* at 1272.

Here, however, Topgolf has not shown a clear and mutual understanding for three reasons. First, there is no genuine dispute that both parties originally understood the ESM position to require 40-45 hours and 5 days weekly. *See* Wilburn Dep. at 199:2, 15-19 (Wilburn was told at her interview that the "position was a Monday through Friday position."); Marques Dep. at 22:12-23-1 (discussing Topgolf's understanding that the position would require 40 hours, but may vary slightly seasonally). Thus, Wilburn had a reasonable basis to believe her salary was intended to cover up to 45 hours of work per week.

Second, Topgolf has not identified reasons Wilburn "knew or should have known" by April of 2016 that her salary was not intended to cover only 45 hours of work per week. It points to the mere fact that she worked more, along with the fact that she was not paid more. This does not demonstrate the requisite understanding. Of course, it is not necessary for employees to understand the manner by which overtime is calculated, *Bailey v. Cty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996), or to agree to the fluctuating workweek plan, *Griffin*, 142 F.3d at 716. But here, unlike in the cases which Topgolf cites to and relies on, Wilburn had no indication or

reason "to understand the essential feature of the fluctuating workweek plan" except for the fact that she was not—at that time—being paid. *Griffin*, 142 F.3d at 716. But her understanding that she was not being paid does not necessarily show an understanding of the fluctuating workweek principles, or that she was not owed for that time, or that the terms of her employment were being implicitly altered.

Third and finally, Topgolf has not carried its burden of showing "a clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period," because the record clearly shows Topgolf believed the employee to be exempt from overtime compensation. 29 C.F.R. 778.114(a). Accordingly, Topgolf did not understand the fluctuating workweek arrangement to apply. *See Brown v. Nipper Auto Parts & Supplies, Inc.*, 2009 U.S. Dist. LEXIS 43213, at *18-*20 (W.D. Va. May 21, 2009) (discussing *Cowan v. Treetop Enters.*, 163 F. Supp. 2d 930, 942 (M.D. Tenn. 2001) and *Rainey v. Am. Forest & Paper Ass'n Inc.*, 26 F. Supp. 2d 82, 102 (D.D.C. 1998)).

Therefore, Topgolf has not shown it is entitled to the fluctuating workweek method of overtime calculation.

## IV. Conclusion

For the reasons stated above, Wilburn's Motion for Sanctions, Dkt. 42, is hereby **DENIED**. Topgolf's Motion for Partial Summary Judgment, Dkt. 39, is **GRANTED IN PART AND DENIED IN PART**. The motion for partial summary judgment is be **GRANTED** only to the extent that Wilburn was exempt from overtime payment requirements, pursuant to 29 U.S.C. § 207(i), for the first year of her maximum three-year recovery period: from April 2016 to March 2017. The motion for partial summary judgment is **DENIED** in all other respects.

Furthermore, Topgolf's original motion for summary judgment, Dkt. 36, and purported statement of undisputed facts, Dkt. 37, are hereby **STRICKEN** for failure to comply with the Local Rules of the Eastern District of Virginia.

It is **SO ORDERED**.

May 1 2020
Alexandria, Virginia

Liam O. Grady
United States District Judge